UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ASHANTE HUNTER, | ) | Case 2:24-cv-02503-CJB-MBN |
| Plaintiff, | ) | District Judge CARL J. BARBIER |
| v. | ) | Magistrate Judge MICHAEL B. NORTH |
| COVINGTON HOUSING AUTHORITY, | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff Ashante Hunter is a low-income single mother of four children under the age of twelve. Ms. Hunter was a participant in the federally funded Section 8 Housing Choice Voucher Program administered by Covington Housing Authority until the events at issue. Her housing subsidy was terminated without the federally required administrative hearing.

Since September her landlord has been receiving only Ms. Hunter's share of the rent: $304 a month. Unless relief is granted her landlord will understandably evict her, because he is receiving only a share of the rent due.

Ms. Hunter and her four children face homelessness unless a preliminary injunction is granted to restore her housing subsidy until an administrative hearing is held and hearing decision issued.

1

## FACTS

The motion is based on the following facts, set out in the Plaintiff's Declaration, which follows the same sequence:

1. Ms. Hunter is a single mother of four children under the age of twelve.

2. Before the actions at issue, Ms. Hunter participated in the Section 8 Housing Choice Voucher Program administered by the Covington Housing Authority ("CHA").

3. Using her Section 8 voucher, she rents a house in Covington from a private landlord. CHA pays the majority of her rent through a Housing Assistance Payment. Ms. Hunter pays the rest, which is her 'tenant portion."

4. The tenant portion is based on her income.

5. Ms. Hunter pays $304 per month of the rent, plus her utilities. CHA pays the landlord another $871 a month.

6. On September 9, 2024, Ms. Hunter received a letter from CHA stating her subsidy assistance "has been terminated" and that as of September 1 she is responsible for the full rental amount for her apartment.

7. A copy of the letter is attached as Exhibit 1-B.

8. The letter is dated August 30, 2024.

9. When Ms. Hunter received the letter on September 9, the postmark date was not until September 7.

10. A copy of the postmarked envelope is attached as Exhibit 1-C.

11. September 7 was after the termination of assistance was made effective.

12. September 7 was after Ms. Hunter's September rent was due.

13. Ms. Hunter's landlord advised her he never received a September or October payment from the CHA.

14. September 10, Ms. Hunter requested an appeal of the termination, which she dropped off at the CHA.

15. Though no hearing was held, on September 17, 2024, the CHA sent a letter to Ms. Hunter again claiming they had grounds to terminate her. It also stated that the decision to terminate the housing assistance will remain in effect. The letter is silent regarding an informal hearing.

16. A copy of this CHA response is attached as Exhibit 1-D.

17. On September 18, Ms. Hunter again requested an appeal.

18. Ms. Hunter still has not received an administrative hearing on the termination of her housing assistance.

19. With the housing subsidy, Ms. Hunter pays only $304 a month in rent.

20. Based on her housing searches, rentals on the private market with even one bedroom averages $1000 a month. Obtaining the number of bedrooms her family of five needs is even more expensive: at least $1400 a month.

21. Ms. Hunter's total income is under $1200 a month, from SSI for a child with a disability, and about $150 a month from hair styling.

22. Ms. Hunter has paid her tenant share ($340 a month) and kept up with utilities, But she does not have a means to pay what had been the CHA share, which is still due.

23. Given the need to cover utilities, phones, and food, she cannot pay anywhere near the market rents.

24. Ms. Hunter faces homelessness because she has no one else who will take her family in if she is evicted.

25. Ms. Hunter does not have a $1000 or more to pay a security deposit for a new apartment if she is evicted and has to find new housing, even with a subsidy if this court ultimately rules in her favor.

## STANDARD OF REVIEW

A preliminary injunction is "typically granted during the pendency of a lawsuit to prevent irreparable injury that may result before a final decision on the merits." *Shanks v. City of Dallas, Texas*, 752 F. 2d 1092, 1096 (5th Cir. 1985).

The factors to be considered on a request for the issuance of a preliminary injunction are:

>   (1)   that there is a substantial likelihood that the plaintiff(s) will ultimately prevail on the merits;
>   (2)   that there is a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted;
>   (3)   that the threatened injury to the plaintiffs outweighs the threatened harm the injunction may do to defendant;
>   (4)   that granting of the preliminary injunction will not disserve the public interest.

*Canal Authority of State of Florida v. Callaway*, 489 F. 2d 567, 572 (5th Cir. 1974). The decision to grant a preliminary injunction should be based "on the balance of the *Canal Authority* factors." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 398 (1981).

## ARGUMENT

## **Because the *Callaway* factors are satisfied, a Preliminary Injunction is warranted to protect Ms. Hunter and her children from irreparable injury.**

### A. **Plaintiff is likely to prevail on the merits of her statutory claim.**

To determine a party's likelihood of success on the merits, the Fifth Circuit "look[s] to the standards provided by the substantive law." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990) (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985)).

Ms. Hunter has a clear likelihood of success on both her statutory and due process claims. The United States Housing Act, 42 U.S.C. § 1437d(k), requires that Public Housing Authority ("PHA") program participants have an opportunity for notice and a hearing when termination of their benefits is proposed:

> ***The Secretary shall by regulation require*** each public housing agency receiving assistance under this Act to establish and ***implement an administrative grievance procedure*** under which tenants will—
> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
> (2) ***have an opportunity for a hearing before an impartial party upon timely request*** within any period applicable under subsection (l);
> (3) have an opportunity to examine any documents or records or regulations related to the proposed action;
> (4) be entitled to be represented by another person of their choice at any hearing;
> (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
> (6) be entitled to receive a written decision by the public housing agency on the proposed action.

HUD's implementing regulations for the Section 8 program further flesh out the requirements in 42 U.S.C. § 1437d(k). Contrary to CHA's procedure, the PHA "must give the opportunity for an informal hearing ***before*** the PHA terminates

5

housing assistance payments for the family under an outstanding HAP contract." 24 C.F.R. 982.555(a)(2) (emphasis added).

The Fifth Circuit has held that the federal requirement to provide an administrative hearing before denial of public housing eligibility under this statute is not satisfied where the tenant was not "provided an opportunity to appear before an impartial tribunal." *Billington v. Underwood*, 613 F.2d 91, 93-94 (5th Cir. 1980) (reversing public housing termination for lack of adequate notice and hearing). "The very notion of a hearing, however informal, connotes that the decision maker will listen to the arguments of both sides before basing a decision on the evidence and legal rules adduced at the hearing." *Id.* at 95.

CHA has violated this right in two respects. First Ms. Hunter has been given no evidentiary hearing at all even though she timely requested an appeal the day after receiving the notice terminating her assistance, and within 3 days of the letter's postmark date. Secondly, the notice mailed on September 7 was certainly not calculated to give Ms. Hunter a hearing in advance of her termination from the program, as required by federal law and due process.

CHA's violation of § 1437d(k) deprived the plaintiff of rights secured by the laws of the United States under color of State law, which is actionable pursuant to 42 U.S.C. § 1983. *Farley v. Phila. Hous. Auth.*, 102 F.3d 697, 698 (3d Cir. 1996) (holding plaintiff "can bring a § 1983 action to enforce her federal right to implement the grievance procedure provided for in the Housing Act"); *Poole v. Hous. Auth. for the Town of Vinton*, 202 F. Supp. 3d 617, 624 (W.D. La. 2016) (granting

summary judgment, holding that § 1437d(k) creates a right of action enforceable through § 1983,); *Stevenson v. Willis*, 579 F.Supp.2d 913, 921-23 (N.D. Ohio 2008) (finding that section 1437d(k) creates federal rights enforceable through section 1983).

Section 8 assistance can only be terminated for specified causes set out in the federal regulations. 24 C.F.R. §§ 982.552 and 982.553. This makes it a form of property, which is protected by the due process clause: "It is well settled that a protected property interest arises where a government benefit may be withdrawn only for cause." *Jeffries v. Ga. Residential Fin. Auth.*, 678 F.2d 919, 925 (11th Cir. 1982) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978) and holding that Section 8 utility assistance is protected by due process). *See also Ruffin v. Hous. Auth. of New Orleans,* 301 F.Supp. 251, 253 (E.D. La. 1969) ("The right of a tenant to public housing is no less 'property' under the Fifth and Fourteenth Amendments than the right of a student to remain in school. A tenant may not be deprived of it without due process of law.").

Courts have recognized that the due process requires pretermination hearings before termination from the program – something never offered Ms. Hunter. *See Ferguson v. Metro. Dev. & Hous. Agency*, 485 F. Supp. 517, 524 (M.D. Tenn. 1980) (citing precedents).

CHA is likely to contend that no hearing is needed because it claims to have reviewed the propriety of Ms. Hunter's termination on September 17th, after her

7

September 10 appeal, and again after this litigation was filed. But such a one sided review does not satisfy due process or the requirements of § 1437d(k).

Even if CHA performed a unilateral review, it did not fulfill the tenant's hearing rights to:

> (3) … examine any documents or records … related to the proposed action;
> (4) … be represented by another person of their choice at any hearing; [and to]
> (5) … ask questions of witnesses and have others make statements on their behalf;

42 U.S.C. § 1437d (3)-(5). And even if it was conducted by "an impartial party," which is not established, it certainly was not a "hearing," as required by § 1437d(k)(2).

These rights to confront and cross-examine accusers, and to know and challenge other adverse evidence are fundamental to our notion of due process, as laid out by the U.S. Supreme Court in *Goldberg v. Kelly*, 397 U.S. 254 (1970):

**The right to present one's case**: "The fundamental requisite of due process of law is the opportunity to be heard." *Goldberg*, 397 U.S. at 267 (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).

**The right to present one's case directly to the decision maker:** "It is not enough that a welfare recipient may present his position to the decision maker in writing or second-hand through his caseworker. Written submissions are an unrealistic option for most recipients, who lack the educational attainment necessary to write effectively and who cannot obtain professional assistance. … Particularly where credibility and veracity are at issue, as they must be in many

termination proceedings, written submissions are a wholly unsatisfactory basis for decision." *Goldberg*, 397 U.S. at 269.

**The right to confront and cross-examine adverse evidence and witnesses**: "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg*, 397 U.S. at 269, (citations omitted).

In driving the point home the Court again stressed the importance of these protections:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. … This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, * * * but also in all types of cases where administrative * * * actions were under scrutiny.

*Goldberg*, 397 U.S. at 270 (quoting *Greene v. McElroy*, 360 U.S. 474, 496—497 (1959) (ellipses in original).

CHA's notion that is can be trusted to make the decision, without the safeguards long established under the housing statute and the Constitution, is simply insupportable.

B. **Without a preliminary injunction, Ms. Hunter and her children will suffer irreparable injury.**

A plaintiff seeking a preliminary injunction must demonstrate that irreparable injury is likely before a decision could be made on the merits. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The Fifth Circuit has long

9

recognized that, when 'the threatened harm is more than *de minimis*, it is not so much the magnitude but the irreparability that counts for the purposes of a preliminary injunction.'" *Callaway.*, 489 F.2d at 574.

Courts have held that the loss of subsidized housing, alone, constitutes an irreparable injury justifying injunctive relief. *Jackson v. Jacobs*, 971 F. Supp. 560, 565 (N.D. Ga. 1997); (citing *Basham v. Freda*, 805 F. Supp. 930, 932 (M.D. Fla. 1992), *aff'd*, 985 F.2d 579 (11th Cir. 1993) ("[p]laintiffs have demonstrated irreparable injury in that a denial of this motion could render them homeless.")); *Young v. Maryville Hous. Auth.*, No. 3:09-CV-37, 2009 WL 2043891, at *10 (E.D. Tenn. July 2, 2009) (holding the plaintiff will be unable to meet her rent obligation, and suffer immediate eviction, thus satisfying the irreparable injury prong).

In addition, a plaintiff's well-founded prospect of homelessness has been recognized as immediate and irreparable injury. *See e.g., Woods v. Bd. of Cty. Comm'rs*, 2020 U.S. Dist. LEXIS 126526, at *20 (D.N.M. July 17, 2020) (Plaintiff demonstrated irreparable harm was highly likely if mandatory preliminary injunction ordering Housing Authority to reinstate Section 8 assistance did not issue, since she would be evicted and become homeless); *Tenants for Justice v. Hills*, 413 F. Supp. 389, 393 (E.D. Pa. 1975) (holding that homelessness is a great and irreparable harm); *Jackson*, 971 F. Supp. at 565 (holding that the irreparable injury of homelessness "can hardly be gainsaid."); *Mitchell v. United States Dep't of Hous. & Urban Dev.*, 569 F. Supp. 701 (N.D. Cal. 1983) (holding that if preliminary injunction is not issued the plaintiff would surely suffer irreparable harm because

the scarcity of subsidized housing would render her homeless); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 328 (E.D.N.Y. 2012) (the "threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable harm and satisfy the first prong of the test for preliminary injunctive relief.").

If CHA is immediately enjoined from enforcing its termination of Ms. Hunter's rent assistance she and her children will be evicted for nonpayment. She cannot afford to pay the rent without her HCV Program subsidy because of her limited income. As shown by her *in forma pauperis* affidavit, she already has no money left over at the end of the month. If evicted, she and her children will experience homelessness, loss of all of their personal possessions, and severe mental anguish. The threat of irreparable harm if a preliminary injunction is denied is clear.

C. **The balance of hardships strongly favors the Plaintiff, and the granting of a preliminary injunction does not disserve the public interest.**

The potential harm to the Plaintiff, should she become homeless, significantly outweighs the potential economic harm and administrative inconvenience a preliminary injunction would cause CHA. *See Jackson*, 971 F. Supp. at 565 (holding that it would be difficult to argue that the modest amount of money and administrative inconvenience a preliminary injunction would cost the [housing provider] outweighs the injury [plaintiff] would suffer if she were compelled to remain homeless"). The potential harm to the plaintiff also outweighs the State's interest in efficient process:

11

> The Supreme Court [in *Goldberg*] reasoned that the interests of the recipient in the uninterrupted provision of benefits and of the State in not wrongly terminating benefits outweighed the State's competing interest in summary adjudication. . . . This reasoning applies with equal force to public housing assistance provided pursuant to Section 8, where eligible participants rely on subsidies to meet their basic need for housing.

*Basco v. Manchin*, 514 F.3d 1177, 1182 n.7 (11th Cir. 2008) (overruled in part on unrelated grounds).

The Fifth Circuit has stated that a preliminary injunction may be granted if the plaintiff carries "the burden of persuasion" on the other factors, and the injunction does not disserve the public interest. *Callaway*, 489 F.2d at 573. Here, it certainly does not disserve the public interest to protect families with financial need from erroneous termination from a public program. *Basham*, 805 F. Supp. at 932 (finding that the "great public interest in guaranteeing that those in financial need are not unreasonably terminated from public assistance benefits" outweighs the "public interest in providing Section 8 housing benefits to other needy individuals . . . ."). Assuming the Plaintiff meets her burden on the other *Callaway* factors, the preliminary injunction should be granted.

D. **Bond should be waived for the indigent Plaintiff.**

Plaintiff should be exempted from the bond requirement of Fed. R. Civ. P. 65(c). The amount of required security is within the discretion of the trial court, and the court may elect to require no security at all. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

Persons suing individually to maintain access to public benefits are not ordinarily required to post bond for an injunction under Rule 65(c). *See, e.g.*, *Doe v.*

*Perales* 82 F. Supp. 201 (W.D.N.Y. 1991) (bond not required of nursing home residents prior to injunction precluding changes in Medicaid program that would reduce the amount of exempt resources available to certain recipients); *Montoya v. Johnston* 654 F. Supp. 511, 514-515 (W.D. Tex. 1987) (injunction against $50,000 cap on payments under Medicaid program for inpatient hospital expenses issued without bond); *Bartels v. Biernat* 405 F. Supp. 1012, 1019 (D. Wis. 1975)*; Bass v. Richardson* 338 F. Supp. 478, 490 (E.D.N.Y. 1971) ("It is clear. . .that indigents, suing individually or as class plaintiffs, ordinarily should not be required to post a bond under Rule 65(c)"), discussed at 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2954 (3d ed. 2015).

Here, Plaintiff cannot afford to pay a cash bond. See ECF 2-1, *Application to Proceed in District Court Without Prepaying Fees or Costs*. Because this case concerns public interests and the balance of hardships sharply favors the Plaintiff, this court should not require Plaintiff to post security.

## CONCLUSION

Plaintiff's application for a preliminary injunction should be granted restoring assistance until an administrative hearing decision issues, or further order of the Court, and bond should be waived.

The preliminary injunction will not fully resolve the case, as the CHA may continue to contest whether its obligation to provide a hearing through judgment, continuing Ms. Hunter's assistance in the interim. Alternatively, even if it grants a hearing in response to a preliminary injunction, a decision on the merits may still

be needed as to whether to restore at least three months' back rent have already been missed.

But if this relief is essential, as Ms. Hunter certainly faces irreparable injury, and has shown a likelihood of succeeding on the merits.

Respectfully submitted,

SOUTHEAST LOUISIANA LEGAL SERVICES

By: /s/ *David Williams*
Amythist Kearney, Bar No. 29511
200 Guidry Dr.
Hammond, LA 70403
(985) 345-2130
akearney@slls.org

David H. Williams, Bar No. 17867
1340 Poydras St. Suite 600
New Orleans, Louisiana 70112
Telephone: (504) 529-1063
dwilliams@slls.org

*Attorneys for Ashante Hunter*