# RESIDENTIAL LEASE AGREEMENT

THIS LEASE (the "Lease") dated this 30th day of August 2018

BETWEEN:

MGS Properties    *116 Campbell Ave Suite 2*

(the "Landlord")    *Mandeville LA 70471*

- AND -

Ashante Hunter

(the "Tenant")

(individually the "Party" and collectively the "Parties")

IN CONSIDERATION OF the Landlord leasing certain premises to the Tenant and other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties agree as follows:

## Leased Property

1. The Landlord agrees to rent to the Tenant the house, municipally described as 205 W 31st Ave Covington, LA 70433 (the "Property"), for use as residential premises only. Neither the Property nor any part of the Property will be used at any time during the term of this Lease by Tenant for the purpose of carrying on any business, profession, or trade of any kind, or for the purpose other than as a private single-family residence.

2. Subject to the provisions of this Lease, apart from the Tenant and the Tenant's immediate family members, no other persons will live in the Property without the prior written permission of the Landlord.

3. No guests of the Tenants may occupy the Property for longer than one week without the prior written consent of the Landlord.

4. No pets or animals are allowed to be kept in or about the Property without the prior written permission of the Landlord. Upon thirty (30) days notice, the Landlord may revoke any consent previously given pursuant to this clause.

**Exhibit 1-A**

5. Subject to the provisions of this Lease, the Tenant is entitled to the use of parking on or about the Property.

6. The Tenant and members of Tenant's household will not smoke anywhere in the Property nor permit any guests or visitors to smoke in the Property.

7. The Property is provided to the Tenant without any furnishings.

## Term

8. The term of the Lease commences at 12:00 noon on August 31, 2018 and ends at 12:00 noon on August 30, 2019.

9. Any notice to terminate this tenancy must comply with the applicable legislation of the State of Louisiana (the "Act").

## Rent

10. Subject to the provisions of this Lease, the rent for the Property is $1,000.00 per month (the "Rent"). The tenant shall be responsible for paying the first month rent upon day of moving into house. The total amount due upon move in will be $1,000.

11. The Tenant will pay the Rent on or before the first of each and every month of the term of this Lease to the Landlord at 110 Campbell Ave Suite 2 Mandeville, LA 70471, direct deposit, or at such other place as the Landlord may later designate.

12. The Landlord may increase the Rent for the Property upon providing to the Tenant the greater of 90 days notice and any notice required by the Act.

13. The Tenant will be charged an additional amount of $5.00 per day for any Rent that is received after the latter of the due date and the expiration of any grace period under the Act, if any.

## Security Deposit

14. On execution of this Lease, the Tenant will pay the Landlord a security deposit of $1,000.00 (the "Security Deposit"). The Tenant will pay $500 of the security deposit upon move in. $250 will be due with second month's rent. $250 will be due with third month's rent.

15. The Landlord will hold the Security Deposit at an interest bearing account solely devoted to security deposits at Resource Bank located at 1695 West Causeway Approach Mandeville, LA 70471.

16. During the term of this Lease or after its termination, the Landlord may charge the Tenant or make deductions from the Security Deposit for any or all of the following:

   a. repair of walls due to plugs, large nails or any unreasonable number of holes in the walls including the repainting of such damaged walls;

   b. repainting required to repair the results of any other improper use or excessive damage by the Tenant;

   c. unplugging toilets, sinks and drains;

   d. replacing damaged or missing doors, windows, screens, mirrors or light fixtures;

   e. repairing cuts, burns, or water damage to linoleum, rugs, and other areas;

   f. any other repairs or cleaning due to any damage beyond normal wear and tear caused or permitted by the Tenant or by any person whom the Tenant is responsible for;

   g. the cost of extermination where the Tenant or the Tenant's guests have brought or allowed insects into the Property or building;

   h. repairs and replacement required where windows are left open which have caused plumbing to freeze, or rain or water damage to floors or walls;

   i. any other purpose allowed under this Lease or the Act.

   For the purpose of this clause, the Landlord may charge the Tenant for professional cleaning and repairs if the Tenant has not made alternate arrangements with the Landlord.

17. The Tenant may not use the Security Deposit as payment for the Rent.

18. Within the time period required by the Act and after the termination of this tenancy, the Landlord will deliver or mail the Security Deposit less any proper deductions or with further demand for payment to: 1015 W 33rd Ave Covington La 70433 or at such other place as the Tenant may advise.

19. The Landlord will return the Security Deposit at the end of this tenancy, less such deductions as provided in this Lease but no deduction will be made for damage due to reasonable wear and tear nor for any deduction prohibited by the Act.

### Quiet Enjoyment

20. The Landlord covenants that on paying the Rent and performing the covenants contained in this Lease, the Tenant will peacefully and quietly have, hold, and enjoy the Property for the agreed term.

### Inspections

21. The Parties will complete, sign and date an inspection report at the beginning and at the end of this tenancy.

22. At all reasonable times during the term of this Lease and any renewal of this Lease, the Landlord and its agents may enter the Property to make inspections or repairs, or to show the Property to prospective tenants or purchasers in compliance with the Act.

### Renewal of Lease

23. Upon giving written notice no later than 60 days before the expiration of the term of this Lease, the Tenant may renew this Lease for an additional term. All terms of the renewed lease will be the same except for this renewal clause and the amount of the rent. If the Parties cannot agree as to the amount of the Rent, the amount of the Rent will be determined by mediation.

### Tenant Improvements

24. The Tenant will obtain written permission from the Landlord before doing any of the following:

   a. applying adhesive materials, or inserting nails or hooks in walls or ceilings other than two small picture hooks per wall;

   b. painting, wallpapering, redecorating or in any way significantly altering the appearance of the Property;

   c. removing or adding walls, or performing any structural alterations;

    d. installing a waterbed(s);

    e. changing the amount of heat or power normally used on the Property as well as installing additional electrical wiring or heating units;

    f. placing or exposing or allowing to be placed or exposed anywhere inside or outside the Property any placard, notice or sign for advertising or any other purpose; or

    g. affixing to or erecting upon or near the Property any radio or TV antenna or tower.

### Utilities and Other Charges

25. The Tenant is responsible for the payment of all utilities in relation to the Property.

### Insurance

26. The Tenant is hereby advised and understands that the personal property of the Tenant is not insured by the Landlord for either damage or loss, and the Landlord assumes no liability for any such loss.

### Attorney Fees

27. In the event that any action is filed in relation to this Lease, the unsuccessful Party in the action will pay to the successful Party, in addition to all the sums that either Party may be called on to pay, a reasonable sum for the successful Party's attorney fees.

### Governing Law

28. This Lease will be construed in accordance with and exclusively governed by the laws of the State of Louisiana.

### Severability

29. If there is a conflict between any provision of this Lease and the Act, the Act will prevail and such provisions of the Lease will be amended or deleted as necessary in order to comply with the Act. Further, any provisions that are required by the Act are incorporated into this Lease.

30. The invalidity or unenforceability of any provisions of this Lease will not affect the validity or enforceability of any other provision of this Lease. Such other provisions remain in full force and effect.

### Amendment of Lease

31. This Lease may only be amended or modified by a written document executed by the Parties.

### Assignment and Subletting

32. The Tenant will not assign this Lease, or sublet or grant any concession or license to use the Property or any part of the Property. Any assignment, subletting, concession, or license, whether by operation of law or otherwise, will be void and will, at Landlord's option, terminate this Lease.

### Damage to Property

33. If the Property should be damaged other than by the Tenant's negligence or willful act or that of the Tenant's employee, family, agent, or visitor and the Landlord decides not to rebuild or repair the Property, the Landlord may end this Lease by giving appropriate notice.

### Maintenance

34. The Tenant will, at its sole expense, keep and maintain the Property and appurtenances in good and sanitary condition and repair during the term of this Lease and any renewal of this Lease.

35. Major maintenance and repair of the Property involving anticipated or actual costs in excess of $100.00 per incident not due to the Tenant's misuse, waste, or neglect or that of the Tenant's employee, family, agent, or visitor, will be the responsibility of the Landlord or the Landlord's assigns.

36. In particular, the Tenant will keep the fixtures in the Property in good order and repair and keep the furnace clean. The Tenant will, at Tenant's sole expense, make all required repairs to the plumbing, range, heating apparatus, and electric and gas fixtures whenever damage to such items will have resulted from the Tenant's misuse, waste, or neglect or that of the Tenant's employee, family, agent, or visitor.

37. Where the Property has its own garden or grass area which is for the exclusive use of the Tenant and its guests, the Tenant will water, fertilize, weed, cut and otherwise maintain the garden or grass area in a reasonable condition including any trees or shrubs therein.

## Care and Use of Property

38. The Tenant will promptly notify the Landlord of any damage, or of any situation that may significantly interfere with the normal use of the Property or to any furnishings supplied by the Landlord.

39. The Tenant will not engage in any illegal trade or activity on or about the Property.

40. The Parties will comply with standards of health, sanitation, fire, housing and safety as required by law.

41. The Parties will use reasonable efforts to maintain the Property in such a condition as to prevent the accumulation of moisture and the growth of mold. The Tenant will promptly notify the Landlord in writing of any moisture accumulation that occurs or of any visible evidence of mold discovered by the Tenant. The Landlord will promptly respond to any such written notices from the Tenant.

42. If the Tenant is absent from the Property and the Property is unoccupied for a period of 4 consecutive days or longer, the Tenant will arrange for regular inspection by a competent person. The Landlord will be notified in advance as to the name, address and phone number of the person doing the inspections.

43. At the expiration of the term of this Lease, the Tenant will quit and surrender the Property in as good a state and condition as they were at the commencement of this Lease, reasonable use and wear and tear excepted.

## Hazardous Materials

44. The Tenant will not keep or have on the Property any article or thing of a dangerous, flammable, or explosive character that might unreasonably increase the danger of fire on the Property or that might be considered hazardous by any responsible insurance company.

### Rules and Regulations

45. The Tenant will obey all rules and regulations of the Landlord regarding the Property.

### Lead Warning

46. Housing built before 1978 may contain lead based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint hazards in the dwelling. **Lessees must also receive a federally approved pamphlet on lead poisoning prevention.**

### Address for Notice

47. For any matter relating to this tenancy, the Tenant may be contacted at the Property or through the phone number below. After this tenancy has been terminated, the contact information of the Tenant is:

    a. Name: Ashante Hunter

    b. Phone: 504-715-2464

    c. Post termination notice address:
       1015 W 33rd Ave Covington La 70433

48. For any matter relating to this tenancy, whether during or after this tenancy has been terminated, the Landlord's address for notice is:

    a. Name: MGS Properties.

    b. Address: 110 Campbell Ave Suite 2 Mandeville, LA 70471.

    c. Phone: 985-875-3126.

    d. Email address: mgspropertiesllc@gmail.com.

## General Provisions

49. All monetary amounts stated or referred to in this Lease are based in the United States dollar.

50. Any waiver by the Landlord of any failure by the Tenant to perform or observe the provisions of this Lease will not operate as a waiver of the Landlord's rights under this Lease in respect of any subsequent defaults, breaches or non-performance and will not defeat or affect in any way the Landlord's rights in respect of any subsequent default or breach.

51. This Lease will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors and assigns, as the case may be, of each Party. All covenants are to be construed as conditions of this Lease.

52. All sums payable by the Tenant to the Landlord pursuant to any provision of this Lease will be deemed to be additional rent and will be recovered by the Landlord as rental arrears.

53. Where there is more than one Tenant executing this Lease, all Tenants are jointly and severally liable for each other's acts, omissions and liabilities pursuant to this Lease.

54. Locks may not be added or changed without the prior written agreement of both Parties, or unless the changes are made in compliance with the Act.

55. The Tenant will be charged an additional amount of $25.00 for each N.S.F. check or checks returned by the Tenant's financial institution.

56. Headings are inserted for the convenience of the Parties only and are not to be considered when interpreting this Lease. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

57. This Lease and the Tenant's leasehold interest under this Lease are and will be subject, subordinate, and inferior to any liens or encumbrances now or hereafter placed on the Property by the Landlord, all advances made under any such liens or encumbrances, the interest payable on any such liens or encumbrances, and any and all renewals or extensions such liens or encumbrances.

58. This Lease may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

59. This Lease constitutes the entire agreement between the Parties. Any prior understanding or representation of any kind preceding the date of this Lease will not be binding on either Party except to the extent incorporated in this Lease.

60. The Tenant will indemnify and save the Landlord, and the owner of the Property where different from the Landlord, harmless from all liabilities, fines, suits, claims, demands and actions of any kind or nature for which the Landlord will or may become liable or suffer by reason of any breach, violation or non-performance by the Tenant or by any person for whom the Tenant is responsible, of any covenant, term, or provisions hereof or by reason of any act, neglect or default on the part of the Tenant or other person for whom the Tenant is responsible. Such indemnification in respect of any such breach, violation or non-performance, damage to property, injury or death occurring during the term of the Lease will survive the termination of the Lease, notwithstanding anything in this Lease to the contrary.

61. The Tenant agrees that the Landlord will not be liable or responsible in any way for any personal injury or death that may be suffered or sustained by the Tenant or by any person for whom the Tenant is responsible who may be on the Property of the Landlord or for any loss of or damage or injury to any property, including cars and contents thereof belonging to the Tenant or to any other person for whom the Tenant is responsible.

62. The Tenant is responsible for any person or persons who are upon or occupying the Property or any other part of the Landlord's premises at the request of the Tenant, either express or implied, whether for the purposes of visiting the Tenant, making deliveries, repairs or attending upon the Property for any other reason. Without limiting the generality of the foregoing, the Tenant is responsible for all members of the Tenant's family, guests, servants, tradesmen, repairmen, employees, agents, invitees or other similar persons.

63. During the last 30 days of this Lease, the Landlord or the Landlord's agents will have the privilege of displaying the usual 'For Sale' or 'For Rent' or 'Vacancy' signs on the Property.

64. Time is of the essence in this Lease.